ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **WANDA FERNANDINI LAMBOY**<br><br>Apelada<br><br>v.<br><br>**PUERTO RICO ONE ALUMINUM MFG CORP.**<br><br>Apelante | KLAN202300061 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.:<br>**BY2018CV02298**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Cintrón Cintrón, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Puerto Rico One Aluminum MFG, Corp. (PR One o parte apelante) acude ante nos mediante recurso de *Apelación* y solicita la revisión de la *Sentencia* emitida el 25 de noviembre de 2022, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. Mediante esta, el TPI declaró Ha Lugar la demanda presentada por la Sra. Wanda Fernandini Lamboy (señora Fernandini Lamboy o apelada), y ordenó el pago de $76,688.00 por concepto de daños y perjuicios causados por la negligencia de PR One.

Por los fundamentos que exponemos a continuación, se confirma la *Sentencia* apelada en cuanto a la imposición de negligencia de PR One, y se revocan las cuantías de daños materiales y emocionales ordenadas por el TPI.

**I.**

Según surge del expediente, el 9 de julio de 2016, la señora Fernandini Lamboy suscribió un contrato con PR One, mediante el cual acordaron la fabricación e instalación de 10 ventanas de

seguridad, dos (2) de cristal, una (1) puerta principal y una (1) puerta corrediza que daba acceso a la terraza de su apartamento. El precio acordado por el trabajo fue de cinco mil setecientos setenta y cuatro ($5,774.00) dólares. Al momento de la instalación, surgieron varios imprevistos con la medida del lugar donde se instalarían las ventanas. Ante ello, empleados de PR One tuvieron que romper paredes.

Como resultado de lo anterior, la señora Fernandini Lamboy presentó una querella en el Departamento de Asuntos del Consumidor (DACo), BAY-2016-0000040. El 6 de marzo de 2017, el inspector del DACo concluyó en su *Informe de Querella* que la instalación de ventanas y puertas en el apartamento de la señora Fernandini Lamboy era defectuosa. El 20 de septiembre de 2017, Puerto Rico sufrió el embate del Huracán María y como consecuencia, las ventanas del apartamento se desprendieron de la estructura, dejando sin protección la residencia de la señora Fernandini Lamboy.

El 18 de mayo de 2018, el DACo emitió una *Resolución*, mediante la cual declaró *Ha Lugar* la querella presentada por la señora Fernandini Lamboy. Concluyó que la instalación de las ventanas fue defectuosa y no fue culminada, según lo pactado. Añadió que lo anterior le ocasionó serios daños a la señora Fernandini Lamboy al no poder disfrutar de su residencia. Resaltó que el expediente no tenía prueba que sustentara las alegaciones de PR One en cuanto al alegado incumplimiento de la señora Fernandini Lamboy. Así las cosas, el DACo ordenó a PR One reembolsarle a la señora Fernandini Lamboy la suma de $6,438.01 pagados por un trabajo que no se realizó según lo representado.

Posteriormente, el 3 de septiembre de 2018, la señora Fernandini Lamboy incoó una demanda de daños y perjuicios ante

el TPI contra PR One.[1] Arguyó que, debido a la instalación defectuosa realizada por la parte demandada, su hogar fue el único en todo el complejo de apartamentos que sufrió la pérdida de las ventanas. Además, adujo que, como consecuencia directa de la instalación defectuosa, el interior de su propiedad sufrió daños a raíz de las lluvias y el viento que tuvieron acceso por los huecos dejados por las ventanas instaladas negligentemente por PR One. Solicitó una suma no menor de $100,000.00 por concepto de los actos negligentes y culposos de PR One y $20,000.00 por los sufrimientos y angustias mentales padecidos.

El 22 de octubre de 2018, PR One, el señor Rodríguez y a la Sociedad Legal de Gananciales compuesta con Fulana de Tal presentaron una *Contestación a la Demanda*. En esencia, argumentaron que aplicaba la doctrina de cosa juzgada en la modalidad de impedimento colateral por sentencia. Además, adujeron que se trataba de un caso de fuerza mayor, pues los daños alegados por la señora Fernandini Lamboy fueron colaterales al paso del Huracán María por Puerto Rico. Finalmente, solicitaron se declarara *No Ha Lugar* la demanda presentada en su contra. El mismo día, presentaron una solicitud de desestimación, en la cual sostuvieron que, aun bajo el crisol más amplio y liberal a favor de la señora Fernandini Lamboy, resultaba forzoso concluir que la demanda no exponía una reclamación que ameritara la concesión de algún remedio en derecho. Acentuaron que la parte demandante pretendía sustentar una acción en daños y perjuicios con alegaciones repetitivas, previamente adjudicadas en el foro administrativo. La señora Fernandini Lamboy se opuso a la moción de desestimación. El foro primario declaró *no ha lugar* el petitorio de

---

[1] El 14 de septiembre de 2018 la señora Fernandini Lamboy solicitó enmendar la demanda a los efectos de incluir al Sr. Eduardo Rodríguez y a la Sociedad Legal de Gananciales compuesta con Fulana de Tal como parte demandada. Ese mismo día el Tribunal autorizó la enmienda.

PR One, el señor Rodríguez y a la Sociedad Legal de Gananciales

compuesta con Fulana de Tal. Específicamente, el TPI expuso:

...

> En la querella ventilada ante el DACo se solicitó la devolución de un dinero pagado a la parte demandada por unos trabajos que alegadamente no se realizaron. En el presente litigio civil se solicita una indemnización por los da[ñ]os y perjuicios ocasionados como consecuencia del incumplimiento de contrato y como consecuencia de las condiciones de peligrosidad que generó dicho incumplimiento, agravada la peligrosidad con motivo del paso del Huracán María por Puerto Rico. Al momento en que se adjudicó la querella del DACo no había surgido la causa de acción relacionada con los daños por las condiciones de peligrosidad durante el huracán según alegado en la demanda. Así las cosas, no podemos privar a la parte demandante de su día en corte.[2]

El 11 de julio de 2019, la señora Fernandini Lamboy instó una

*Segunda Demanda Enmendada*, a los efectos de incluir a la Sra.

Marciala Suárez Asencio, esposa del señor Eduardo Rodríguez. Por

su parte, el 17 de septiembre de 2019, PR One, el señor Rodríguez,

la señora Suárez Asencio y a la Sociedad Legal de Gananciales

compuesta por ambos contestó la segunda demanda enmendada y

presentó una reconvención. Arguyó que, en un esfuerzo por obtener

una injusta compensación económica, la parte demandante

interpuso una reclamación en su contra por hechos que fueron

producto de su omisión negligente y el resultado de una estrategia

dirigida a un inmeritorio lucro económico. Sostuvieron que ello les

causó daños a su reputación y estabilidad profesional y personal,

los cuales estimaron en una suma no menor de $200,000.00.

Además, solicitaron la desestimación de la demanda en su contra.[3]

Luego de múltiples trámites, el juicio en su fondo se celebró

el 12 y 13 de julio de 2021. Las partes comparecieron representadas

---

[2] *Resolución* del 28 de noviembre de 2018. La parte demandada solicitó reconsideración de esta determinación, pero fue denegada por el Tribunal mediante *Resolución* del 19 de diciembre de 2018.

[3] En octubre de 2019, la señora Fernandini Lamboy replicó a la reconvención y solicitó su desestimación. También se opuso a la solicitud de desestimación de la segunda demanda enmendada. El 4 de noviembre de 2019, la parte demandada incoó su *Moción en Oposición a Desestimación de Reconvención*.

por sus abogados y se presentaron los siguientes testigos, por la parte demandante: la señora Fernandini Lamboy y como su perito, el doctor en ingeniería mecánica, Iván José Baigés Valentín (ingeniero Baigés). Por la parte demandada, se presentaron los siguientes testigos: Sra. Nelly Enid Rodríguez Suárez, representante de PR One, y el perito ajustador Doel Banchs.

Tras evaluar los testimonios vertidos en el juicio y la prueba documental admitida como evidencia, el 25 de noviembre de 2022, notificada el 28 de noviembre de 2022, el TPI dictó la *Sentencia* apelada, mediante la cual declaró *Ha Lugar* la demanda presentada por la señora Fernandini Lamboy. El foro primario concluyó que se establecieron de forma incontrovertida los siguientes hechos:

1) La señora Fernandini es dueña del apartamento 302-D, ubicado en el Condominio Riberas del Río, Bayamón, PR.

2) En julio de 2016, la señora Fernandini suscribió un contrato con One para que esta empresa fabricara e instalara 10 ventanas de seguridad y 2 de cristales, la puerta principal y una puerta corrediza que da acceso a la terraza del apartamento.

3) Por este trabajo, One facturó $5,774.00, de los cuales la demandante entregó para la fabricación $2,500.00, y más adelante el resto, $3,274.00.

4) One envió personal para instalar las ventanas y puerta el 17 de noviembre de 2016, ese día instalaron 7 ventanas. Previo a estos, One había señalado fechas anteriores para instalarlas, pero no se personó, por lo que la demandante tuvo que llamarlo en varias ocasiones, hasta que personal de One presentó para instalar en la fecha mencionada.

5) El 18 de noviembre de 2016, continuó la instalación de las ventanas, para ello se tuvo que romper mocheta, ya que las ventanas no cabían en el espacio de ventanas de apartamento.

6) La señora Fernandini, ese día se dio cuenta que las ventanas no eran nuevas y que no cerraban por que los operadores no funcionaban, One le indicó que con el tiempo los operadores de "aflojarían".

7) El 23 de noviembre de 2016, One trató de instalar las puertas, pero estas eran muy pequeñas y no cabían en las entradas donde se supone que se instalaran.

8) Durante el proceso de instalación de las ventanas los empleados de One causaron múltiples daños a la propiedad de la demandante, como rayar pintura de los techos [y] dañar abanicos. Además, las ventana[s] no fueron hechas con las medidas correctas por lo que los empleados de One tuvieron que romper mochetas y nunca lograron instalar correctamente las mismas.

9) Por lo anterior la señora Fernandini presentó una querella ante el DACo, el 23 de noviembre de 2016.

10) DACo realizó una inspección, el 6 de marzo de 2017, al apartamento para corroborar lo [informado por] la señora Fernandini, además de corroborar lo alegado, esta agencia determinó, entre otras cosas, que las ventanas no habían sido fijadas al marco de la pared con tornillos. El perito de la demanda[da] también llegó a la misma conclusión.

11) Al momento de instalar las ventanas One no figuraba en el Registro de Contratistas de conformidad con lo requerido por el Art. 2 de la Ley Núm. 146-1995.

12) Según resolvió DACo, One realizó falsa [representación] y hasta ocurrido el Huracán María One no reparó los desperfectos de las ventanas.

13) Debido a lo anterior, DACo no permitió que One reparar[a] el daño a las ventanas y procedió a emitir una sentencia en contra de One.

14) Debido a los múltiples incumplimientos y defectos de fábrica creados por One, el 18 de mayo de 2018, DACo le ordenó a esta empresa entregar todas las sumas invertidas por la demandante con One en la instalación de las puertas y ventanas, $6,438.01, y resolvió el contrato entre las partes por incumplimiento de One.

15) El 20 de septiembre de 2017, pasó por Puerto Rico el Huracán María.

16) Durante el paso del Huracán María las ventanas de la residencia de la señora Fernandini sufrieron el embate de vientos de aproximadamente 145 millas por hora.

17) Las cuatro (4) ventanas del cuarto dormitorio del apartamento se salieron de lugar dejando el [espacio] donde estas se ubicaban sin ningún tipo de protección. De hecho, las ventanas desaparecieron por los vientos.

18) Según los códigos de construcción las ventanas debían resistir vientos de mayor intensidad a los señalados en el inciso 16, sin embargo, estas cedieron debido a la mala instalación de las mismas.

19) El apartamento de la señora Fernandini fue [el] único que perdió las ventanas en el Condominio donde ubica el mismo.

20) Luego del paso del Huracán María y debido a las condiciones en que quedó el apartamento, la demandante tuvo que alojarse por un periodo de 6 meses con su prima hasta que el apartamento quedara en condiciones de ser habitable.

21) Los vientos y lluvia que entraron debido a que cedieron las ventanas mal instaladas por One causaron severos daños al apartamento, los equipos, muebles y ropa de la señora Fernandini. Los cuales detallamos a continuación:

    a. Para tapar los huecos dejados por las ventanas en su apartamento la señora Fernandini instaló varios paneles los cuales conllevaron un costo de $225.00.

    b. Por la instalación de aires acondicionados en su cuarto, $637.00.

    c. Tormenteras tipo acordeón por $3,000.00

   d. Muebles por un valor de $721.41, para sustituir los que se dañaron en su apartamento debido al paso del Huracán María.

   e. Juego de comedor, $992.36.

   f. De abanico de pedestal, $44.58.

   g. "Vanity" baño de visitas, $705.80.

   h. "Vanity" del baño de visitas, $80.00.

   i. Exhibit 18: factura Home and Patio Gallery por juego de cuarto de la habitación que se quedó sin ventanas, $1,050.

   j. Por materiales para pintar el apartamento, $104.39.

   k. Compra de materiales, $71.19.

   l. Compra de un colchón ("mattress"), $547.00 y $40.00 por la entrega del mismo.

   m. Compra de lámpara de balcón $22.00.

   n. Compra en JC Penny, $100.05.

   o. Compra de zapatos, $34.42.

   p. Compra de televisor, $323.14.

   q. Rack para colocar televisor en la pared, por $56.73.

   r. Compra de cartera por $78.04.

   s. Compra de cartera por $55.74.

   t. Compra de toallas, artículos del hogar y zapatos por $74.68.

   u. Compra en Walmart toallas por $26.08.

   v. Compra en Marshalls de cortinas y alfombras para el baño por $115.86.

   w. Compra en Macy's y JC Penney de sabanas y toallas por $79.13, y $37.90 respectivamente.

   x. Compra en Macy's de ropa por valor de $96.27, para sustituir la ropa perdida debido al paso del Huracán María.

   y. Compra de puertas aluminio, para sustituir las destruidas debido al paso del Huracán para los cuartos, $2,726.80.

   z. Por el estimado de daños solicitados por FEMA a su apartamento la señora Fernandini tuvo que pagar $250.00.

   aa. Por "screens" de ventanas, destruidos debido al paso del Huracán María la demandante tuvo que pagar $802.00.

   bb. Por instalación de puertas y ventanas destruidas o dañadas por el Huracán María, $10,150.46.

22) Debido a lo ocurrido en el apartamento luego [del] paso del Huracán María la señora Fernandini sufrió graves daños emocionales y mentales.

23) Debido al daño ocasionado por el Huracán María al apartamento de la demandante, esta solicitó y recibió un préstamo de aproximadamente $21,600.00, del Small Business Administration, primero recibió un préstamo $24,600.00, pero tuvo que devolver $3,000.00.

El TPI les dio entero crédito a los testimonios de la señora Fernandini Lamboy y su perito, más no así a los vertidos por los testigos de la parte demandada. Además, le otorgó entero crédito a

la Resolución del DACo emitida el 18 de mayo de 2018. De este modo, el foro primario concluyó que no existían dudas de que PR One fue negligente al instalar incorrectamente las ventanas del apartamento de la señora Fernandini Lamboy y que fue por la mala instalación que cedieron cuando fueron sometidas a los vientos del Huracán María. Destacó que fue porque las ventanas cedieron, que la señora Fernandini Lamboy perdió su ropa, muebles y otras pertenencias, por lo que tuvo que solicitar un préstamo a Small Business Administration (SBA) para poder costear los daños ocasionados.

El foro *a quo* añadió que ninguno de los testigos presentados por PR One contradijo las conclusiones del DACo ni del ingeniero Baigés y que, incluso, la testigo de dicha compañía, señora Rodríguez Suárez, aceptó que la instalación de las ventanas fue incorrecta y que se necesitaba corregir el desperfecto. El Tribunal aseveró que PR One no tenía derecho, ni capacidad para instalarle las ventanas a la señora Fernandini Lamboy. Afirmó que la línea de argumentación tomada por la compañía, con relación al porqué ocurrieron los daños, era inmeritoria. A su vez, destacó que tampoco el perito ajustador de PR One rebatió lo señalado por el DACo en su dictamen.

En cuanto a los daños, el tribunal determinó que la señora Fernandini Lamboy presentó toda la prueba necesaria para poder adjudicar las pérdidas. Confirió una suma de $36,688.00 por las pérdidas materiales y gastos prestamistas, así como $30,000.00 por concepto de daños mentales por la pérdida de sus pertenencias y la condición en que quedó el apartamento, para un total de $76,688.00[4].

---

[4] Entendemos que dicha suma contiene un error matemático.

A raíz de lo anterior, la señora Fernandini Lamboy presentó un *Memorando de Costas.* Solicitó $4,500.00 por concepto de los gastos incurridos durante el proceso. El 20 de diciembre de 2022, el TPI declaró *Con Lugar* el memorando y ordenó el pago a favor de la señora Fernandini Lamboy, más las cuantías concedidas en la *Sentencia.*

Inconforme con el dictamen del TPI, PR One solicitó reconsideración, sin éxito. Aun en desacuerdo, acude ante nos mediante recurso de *Apelación* y alega que el TPI cometió los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, ABUSÓ DE SU DISCRECIÓN Y COMETIÓ ERROR MANIFIESTO EN LA INTERPRETACIÓN DE LA PRUEBA DOCUMENTAL, TESTIMONIAL Y PERICIAL DISPONIBLE A CONSIDERACIÓN JUDICIAL.
>
> **SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, COMETIÓ ERROR MANIFIESTO EN DERECHO, AL NO DESESTIMAR LA ACCIÓN DE MARRAS POR APLICABILIDAD DE LA DOCTRINA DE COSA JUZGADA Y SUS VERTIENTES DE IMPEDIMENTO COLATERAL POR SENTENCIA Y FRACCIONAMIENTO DE CAUSA.
>
> **TERCER SEÑALAMIENTO DE ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR EL COBRO DE COSTAS Y HONORARIOS POR PRUEBA PERICIAL QUE RESULTÓ INNECESARIA PARA LA EVALUACIÓN DE LOS HECHOS Y LA APLICACIÓN DEL DERECHO SOBRE LA CONTROVERSIA DE MARRAS.

El 23 de febrero de 2023, la señora Fernandini Lamboy presentó *Alegato de la Apelada.* Con el beneficio de la comparecencia de todas las partes, resolvemos.

**II.**

**A.**

El Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141,[5] dispone que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado [...]". Como podemos ver, para probar una causa de acción por daños y perjuicios, el promovente deberá demostrar, mediante preponderancia de la prueba: (1) que se ha sufrido un daño; (2) por medio de un acto u omisión culposo o negligente; y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. *García v. E.L.A.,* 163 DPR 800, 809 (2005). Así pues, el que un demandante ostente el derecho a recibir indemnización por un alegado daño presupone la existencia de un nexo causal entre el daño y el factor que lo origina. Es decir, sólo corresponde indemnizar los daños que son consecuencia del hecho que obliga a la indemnización. *Rivera Jiménez v. Garrido & Co., Inc.,* 134 DPR 840, 851-852 (1993).

Se ha establecido que la culpa o negligencia consiste en "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Perez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021); *López v. Porrata Doria*, 169 DPR 135, 151 (2006). Cuando se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a la alegada negligencia le corresponde a la parte demandante. *Colon y otros v. Kmart y otros*, 154 DPR 510, 521 (2001); *Matos v. Adm. Servs. Médicos de PR*, 118 DPR 567, 569 (1987).

---

[5] El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

En Puerto Rico rige la teoría de la causalidad adecuada para determinar el nexo causal necesario para adjudicar responsabilidad civil. La causa adecuada es la que, según la experiencia general, ordinariamente produce los daños imputados. No es otra cosa que el evento o acto que con mayor probabilidad causó el daño por el que se reclama indemnización. *Miranda v. ELA*, 137 DPR 700, 707 (1994); *Negrón García v. Noriega Ortiz*, 117 DPR 570, 575 (1984). Así pues, un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Montalvo v. Cruz*, 144 DPR 748, 756-757 (1998), citando a *Torres Trumbull v. Pesquera*, 97 DPR 338, 343-344 (1969).

**B.**

La tarea de estimar y valorar daños es una labor difícil, ardua y angustiosa, ya que no existen fórmulas matemáticas o científicas de especificidad exacta que indiquen como se justiprecia el dolor y el sufrimiento. *Herrera, Rivera v. SLG Ramírez-Vicéns*, 179 DPR 774, 791 (2010); *Vázquez Figueroa v. ELA*, 172 DPR 150, 154 (2007); *Nieves Cruz v. UPR*, 151 DPR 150, 169-170 (2000). No existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden complacidas y satisfechas. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016). La valorización del daño descansa en la discreción, prudencia, juicio y razonabilidad del juzgador o la juzgadora de hechos motivado por un sentido de justicia y de conciencia humana. *Urrutia v. AAA*, 103 DPR 643, 647-648 (1975). Esta responde a factores únicos, por lo que debe ser considerada conforme a los hechos y circunstancias particulares de cada caso. *Nieves Cruz v. UPR*, supra, pág. 177.

Al medir el daño a ser compensado, el juzgador o juzgadora debe hacerlo a base de la prueba, procurando siempre que la

indemnización no se convierta en una industria y se mantenga su sentido remediador, no punitivo. *Rodríguez Báez v. Nationwide Insurance Co.*, 156 DPR 614, 628 (2002). Por lo tanto, los tribunales deben buscar una proporción razonable entre el daño causado y la indemnización concedida, de suerte que la adjudicación sea balanceada, es decir, ni extremadamente baja ni desproporcionalmente alta. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 342 (1998). *Santiago Montañez v. Fresenius Medical,* supra*,* pág. 490; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013). Ello responde a que los jueces y las juezas de instancia están en mejor posición que los tribunales apelativos para evaluar los daños, toda vez que estos son los que tienen contacto directo con la prueba presentada. *Blás v. Hosp. Guadalupe, supra*, pág. 339.

Nuestro Tribunal Supremo ha establecido que, para evaluar si la compensación concedida por el Tribunal de Primera Instancia es ridículamente baja o exageradamente alta, debemos examinar la prueba desfilada ante ese foro y las cuantías otorgadas en casos similares resueltos anteriormente. *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, pág. 785. En ese sentido, las indemnizaciones concedidas en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 909–910 (2012); *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, pág. 785. Ello es así aun cuando es sabido que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. *Íd.* En todo caso, las compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. *Meléndez Vega v. El Vocero de PR*, supra, pág. 204; *Rodríguez et al. v. Hospital et al.*, supra, pág. 910; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, pág. 785.

Así, el juzgador o la juzgadora tiene la obligación de especificar la jurisprudencia que haya usado como guía para valorar los daños al igual que el cómputo realizado para ajustar las cuantías de casos anteriores a su valor actual y el caso que se encuentre adjudicando. Es forzoso explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración. *Santiago Montañez v. Fresenius Medical,* supra, pág. 493.

## C.

Las Reglas de Procedimiento Civil regulan la concesión de costas en nuestro ordenamiento. Específicamente, la Regla 44.1, 32 LPRA Ap. V, R. 44.4, establece lo siguiente:

(a) Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

Esta disposición tiene una función reparadora, ya que permite el reembolso de los gastos necesarios y razonables que tuvo que incurrir la parte prevaleciente del pleito en su tramitación. *Rosario Domínguez v. ELA*, 198 DPR 197, 211 (2017). De esta forma no queda "menguado" por los gastos que tuvo que incurrir sin su culpa y por culpa del adversario. *Íd.*, citando a *Maderas Tratadas v. Sun Alliance et. al.,* 185 DPR 880, 934 (2012).

Una vez se reclaman, la imposición de costas a favor de la parte victoriosa es mandatoria. *Rosario Domínguez v. ELA, supra,* pág. 212. No obstante, su concesión no opera de forma automática, ya que tiene que presentarse oportunamente un memorando de costas en el que se precisen los gastos incurridos. *Colón Santos v. Coop. Seg. Mult. De PR,* 173 DPR 170, 187 (2008). Además,

corresponde al tribunal, en el marco de su discreción, evaluar la razonabilidad de éstos. *Maderas Tratadas v. Sun Alliance et. al.,* supra, pág. 935. Son recobrables aquellos gastos incurridos necesariamente en la tramitación del pleito. *JTP Development Corp. v. Majestic Realty Corp.,* 130 DPR 456, 460 (1992). De esta manera, quedan excluidos aquellos gastos innecesarios, superfluos o extravagantes. *Maderas Tratadas v. Sun Alliance,* supra, pág. 935.

**III.**

En el caso ante nuestra consideración, la parte apelante alega que el TPI erró al interpretar la prueba documental, testimonial y pericial disponible. Añade que el foro apelado realizó determinaciones inconsecuentes con la prueba presentada que convierten en inherentemente increíbles e imposibles las determinaciones de hechos formuladas. Además, aduce que el TPI incluyó en su dictamen partidas improcedentes sobre las cuales no se reclamaron daños, partidas previamente resarcidas, partidas para las cuales no se presentó prueba y partidas calculadas por el criterio judicial de forma arbitraria.

Como norma general, los tribunales apelativos no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el TPI, a menos que la parte que las cuestione demuestre que medió pasión, prejuicio, parcialidad o error manifiesto. Véase, *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998).

Tras un análisis ponderado del expediente, este Tribunal encontró incongruencias entre las determinaciones de hechos y las conclusiones de derecho efectuadas por el foro primario. Las determinaciones de ese foro nos producen insatisfacción de

conciencia[6], particularmente ciertas cuantías relacionadas a las pérdidas materiales y daños mentales de la apelada.

Cabe resaltar que no estamos en posición de determinar si el TPI erró al apreciar la prueba oral y pericial que tuvo ante sí. Resulta evidente que la transcripción de la prueba oral constituía pieza clave para poder corroborar las alegaciones realizadas por la parte apelante. Sin embargo, la parte apelante no la presentó. Ahora bien, la decisión que hoy tomamos está basada en el análisis de las determinaciones de hechos que constan en la sentencia *vis a vis* con la prueba que obra en el expediente.

El foro primario concedió una partida de $30,000.00 por los daños mentales sufridos por la apelada debido a la pérdida de sus pertenencias y la condición en que quedó el apartamento. Evaluada dicha estimación y valoración, determinamos que el TPI erró en su decisión. Entendemos que dicha cuantía no encuentra apoyo en las determinaciones de hechos que se incluyó en el pronunciamiento apelado. De la *Sentencia* no surge que se haya seguido la normativa expuesta en *Santiago Montañez v. Fresenius Medical*, supra, la cual expresamente dispone que el Tribunal debe incluir los casos similares que utilizó como guía para la concesión de la partida concernida. Por igual, el foro primario no explicó, ni efectuó cálculo alguno para llegar a la cantidad mencionada. Nuestro Tribunal Supremo ha advertido a los jueces sobre la importancia de lo anterior.

Así las cosas, procede la devolución del caso al foro *a quo* para que, de conformidad con el caso de *Santiago Montañez v. Fresenius Medical*, supra, compute y adjudique la partida que proceda en concepto de daños mentales de la apelada, ajustada al valor presente.

---

[6] *Flores v. Soc. de Gananciales*, supra, citando *López Vicil v. ITT Intermedia, Inc.*, 142 DPR 857 (1997).

De otra parte, con relación a las partidas por los daños materiales concedidas a la apelada, corresponde al TPI realizar una evaluación minuciosa, según la prueba presentada y creída, de los daños sufridos por la apelada **que son consecuencia de la instalación defectuosa de las ventanas y las puertas en el apartamento**.[7] De igual manera, deberá examinar cómo incide en ese ejercicio el dictamen del DACo que ordenó a PR One devolverle a la apelada los **$6,438.01** que pagó **por la instalación de las puertas y ventanas de su apartamento**.[8]

En lo pertinente al tercer señalamiento de error, la parte apelante aduce que erró el foro primario al ordenar el cobro de costas y honorarios por prueba pericial. Alega que dicha evidencia resultó innecesaria para la evaluación de los hechos y la aplicación del derecho del caso de epígrafe.[9]

Ante lo discutido en el presente dictamen, el planteamiento sobre la concesión de costas resulta prematuro, toda vez que el TPI deberá realizar una evaluación de la prueba presentada por la apelada en cuanto a la valoración de los daños de conformidad a lo aquí intimado.

---

[7] A modo de recordatorio, el Tribunal Supremo de Puerto Rico ha establecido que los proyectos de sentencia constituyen un instrumento de ayuda para los jueces que, en su mayoría, se encuentran sobrecargados con una gran cantidad de causas judiciales. *Román Cruz v. Díaz Rifas*, 113 DPR 500, 508 (1982). No obstante, la práctica de "firmar a ciegas" proyectos de sentencia resulta impropio, pues tales escritos "no pueden sustituir los dictados de la sana y juiciosa crítica del juez en su labor de desentrañar la verdad". *Nieves Díaz v. González Massas*, 178 DPR 820, 853 (2010), citando a *Malavé v. Hosp. de la Concepción*, 100 DPR 55, 56 (1971). En el descargue de su función adjudicativa, los jueces deben ser más minuciosos al evaluar el contenido de ese tipo de escrito, pues la función adjudicativa es indelegable. *Román Cruz v. Díaz Rifas*, supra, pág. 508.

[8] Nótese que mediante las determinaciones de hechos núm. 21(y) y (bb), el foro primario le concedió a la apelada **$2,726.80 para la compra de puertas de aluminio para sustituir las destruidas debido al paso del Huracán María para los cuartos**, así como **$10,150.46 por concepto de instalación de puertas y ventanas destruidas o dañadas por el Huracán María.** Otras partidas otorgadas por el tribunal que se deben evaluar cautelosamente son aquellas plasmadas en las determinaciones de hechos núm. 21 (c)(g)(h)(m)(aa) y 23(préstamo SBA y sus intereses por la vida del mismo).

[9] En particular, el memorando contenía las siguientes partidas: (1) Sello de radicación = $90.00; (2) Emplazamiento = $80.00; (3) *Affidavit* = $30.00; y (4) Peritaje Ing. Iván J. Baigés Valentín = $4,300.00. Todo ello totaliza: $4,500.00. Véase: *Memorando de costas*, Apéndice de la Apelación, págs. 608-609.

## IV.

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada solo en cuanto a su determinación de negligencia por la parte apelante. Por otro lado, se revoca y se deja sin efecto la concesión de las partidas por concepto de daños materiales, gastos prestamistas y daños mentales. Se devuelve el caso al TPI para que efectúe la evaluación, según la prueba que obra en el expediente. Sobre los daños mentales, el foro primario deberá incluir en su dictamen el análisis de la partida a ser concedida, de conformidad con el caso *Santiago Montañez v. Fresenius Medical,* supra.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La Juez Barresi Ramos *concurre* con la disposición del presente caso en lo concerniente a la revocación y devolución del caso para adjudicar y computar las partidas concedidas por los daños materiales, gastos prestamistas y daños mentales. Por otro lado, *disiente* en cuanto a la confirmación de la *Sentencia* apelada referente a la determinación de negligencia.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones